UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    and<br><br>NATALYA PRACH, IVAN KRIGER, ANDREY SAMOLOVOV, AND ANATOLIY TSIRIBKO, and NORTHWEST FAIR HOUSING ALLIANCE,<br><br>    Plaintiffs-Intervenors,<br><br>    v.<br><br>BOWEN PROPERTY MANAGEMENT, SPOKANE HOUSING AUTHORITY, WESTFALL VILLAGE APARTMENTS, L.P., JOHN BALLAS, AND KERREY LEMONS,<br><br>    Defendants. | NO. CV-03-0250-EFS<br><br>**ORDER DENYING BOWEN PROPERTY MANAGEMENT'S MOTION FOR SUMMARY JUDGMENT AND GOVERNMENT'S MOTION TO STRIKE AND REQUIRING PARTIES TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION** |

    A telephonic hearing was held in the above-captioned case on June 28, 2005. Avery Johnson and Bert Daughtery appeared on behalf of the United States; Jeffry Finer appeared on behalf of Natalya Prach; Chris Grimes appeared on behalf of the other Plaintiffs-Intervenors; Julian St. Marie appeared on behalf of the Northwest Fair Housing Alliance; Michael Parker appeared on behalf of Kerrey Lemons; and Eric Steven

ORDER ~ 1

appeared on behalf of Bowen Property Management and John Ballas.  Before the Court were Defendant Bowen Property Management's Motion for Summary Judgment, (Ct. Rec. 162), and Plaintiff United States' Motion to Strike Defendant Bowen Property Management's Reply Memorandum in Support of Motion for Summary Judgment or, Alternatively, for Leave to File Surreply, (Ct. Rec. 196).  After reviewing the submitted material and applicable statutory and case law and taking oral argument, the Court is fully informed.  This Order serves to supplement and memorialize the Court's oral denial of both the Defendant's and United States' motions.

**I. DEFENDANT BOWEN PROPERTY MANAGEMENT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Bowen Property Management ("Bowen") seeks an order granting summary judgment in its favor on the grounds that no genuine triable issues of material fact exist because the facts show (1) Kerrey Lemons was acting outside the scope of her employment and thus Bowen is not vicariously liable, (2) the intent of the Fair Housing Act would be frustrated if Natalia Prach, Ivan Kriger, Andrey Samolovov, and Anatoliy Tsiribko were allowed to proceed as Congress did not intend to protect illegal conduct under the Fair Housing Act, and (3) Anatoliy Tsiribko cannot maintain his action because he did nothing to secure rights under the Fair Housing Act.  Natalya Prach filed an opposition to the motion,[1] to which the Northwest Fair Housing Alliance joined.  In addition, Plaintiffs-Intervenors Mr. Kriger, Mr. Samolovov, and Mr. Tsirbko (hereinafter referred to as "Plaintiffs-Intervenors" filed an

---

[1] At the hearing, Bowen withdrew its request to strike Ms. Prach's opposition as untimely.

ORDER ~ 2

opposition.[2] The United States also filed an opposition. Following, Bowen filed two replies; in response to the second reply, the United States filed a Motion to Strike Bowen's second reply.[3]

**A.   Statement of Uncontroverted Facts**[4]

Bowen is an Oregon corporation doing business in the State of Washington. Bowen managed the Westfall Village Apartments ("Westfall Village"), located at 3724 N. Cook Street in Spokane, Washington, from their initial rent-up in mid-1997 through June 2002.[5] During the time period relevant to this action, Defendant John Ballas was the vice president and general manager of operations for Bowen. Defendant Kerrey Lemons was employed by Bowen as the rental manager at Westfall Village

---

[2] At the hearing, Bowen withdrew its request to strike Ms. Prach's opposition as untimely.

[3] The Court finds it unnecessary to strike Bowen's reply and determines additional briefing is unnecessary as the issues are fully before the Court.

[4] The Statement of Uncontroverted Facts was agreed to by the parties, (Ct. Rec. 203). Given that the parties' jointly agree as to these facts, and the Court finds that such material facts exist without substantial controversy, such facts are deemed established under Federal Rule of Civil Procedure 56(d).

[5] The Spokane Housing Authority did not renew or extend its contract with Bowen to manage the Westfall Village Apartments when it expired in June 2002. The apartments at Westfall Village are dwellings within the meaning of 42 U.S.C. § 3602(b).

ORDER ~ 3

from April 1997 through June 2002. Mr. Ballas was one of Ms. Lemons' supervisors during the time period relevant to this action. Mr. Ballas visited Westfall Village periodically and met on occasion with Ms. Lemons to review the operation of the apartments.

As the rental manager, Ms. Lemons' responsibilities included, but were not limited to, reviewing rental applications and submitting applications for tenancy to Bowen for final approval, as well as accepting and depositing payments for application fees, deposits, and rent. In or around September 1999, Natalya Prach, a tenant at Westfall Village, began working for Bowen at Westfall Village. Ms. Prach is of Russian national origin. She speaks Russian and also speaks English to some degree. Kerrey Lemons was Ms. Prach's on-site supervisor. Ms. Prach's compensation as assistant manager was made in part in the form of a credit against her monthly rent at Westfall Village.

On or about May 30, 2000, Ms. Prach called John Ballas and alleged that Ms. Lemons was soliciting and obtaining additional fees from Russian applicants and tenants in exchange for giving them apartments over other applicants. Mr. Ballas informed Ms. Lemons of Ms. Prach's allegations by telephone. Ms. Prach contacted Mr. Ballas again by telephone on May 31, 2000, and retracted her prior allegations about Ms. Lemons. On May 31, 2000, there was a meeting at Westfall Village which the following persons attended: Natalya Prach, Ivan Kriger,[6] Andrey

---

[6] Plaintiff-Intervenor Ivan Kriger is of Russian national origin and speaks Russian and English. Mr. Kriger has never been a resident at Westfall Village.

ORDER ~ 4

Samolovov,[7] Anatoliy Tsiribko,[8] Llyudmila Greben, Irena Greben, Kerrey Lemons, and Glen Lemons.  On June 1, 2000, Ms. Prach again called Mr. Ballas and told him that the allegations she made against Ms. Lemons in her first call to him on May 30 were true.

Mr. Ballas kept his superiors at Bowen informed of the events that occurred from May 30 through June 1, 2000, as they occurred during those three days, and discussed with them what action, if any, Bowen should take.  Soon after June 1, 2000, Mr. Ballas authorized a notice of termination of tenancy to be issued to Ms. Prach.  In June, 2000, the Northwest Fair Housing Alliance[9] (NWFHA) received complaints from Ms. Prach and others alleging that the Defendants had violated the Fair Housing Act by discriminating on the basis of national origin - specifically, that Ms. Lemons charged persons of Russian origin special "fees" to process their application for new housing and for transfers.

---

[7] Plaintiff-Intervenor Andrey Samolovov is of Russian national origin and speaks Russian and some English.  Mr. Samolovov has never been a resident at Westfall Village.

[8] Plaintiff-Intervenor Anatoliy Tsiribko is of Russian national origin and speaks Russian and some English.  During the relevant time period, Mr. Tsiribko lived with Ms. Prach at Westfall Village.

[9] NWFHA is a non-profit organization whose purpose is to ensure equal housing opportunity for the people of Eastern Washington through education, counseling, and advocacy.  NWFHA's mission included investigating and responding to complaints relating to violations of the Fair Housing Act.

ORDER ~ 5

NWFHA helped Ms. Prach and other Russian nationals including Vera Filipenko, Irina and Vladimir Greben, and Mikhail and Nadya Azarov file complaints of housing discrimination with the United States Department of Housing and Urban Development (HUD) on or around July 11 and 13, 2000.

Ms. Prach and Plaintiff-Intervenors Ivan Kriger, Andrey Samolovov, and Anatoliy Tsiribko were arrested on or about September 6, 2000. These individuals were jailed for one day after their arrest and subsequently pled guilty to misdemeanor disorderly conduct and were sentenced to one year probation.

Bowen retained Ms. Lemons as a resident manager at Westfall Village until June 2002 when its management responsibilities there ended. After leaving Westfall Village, Ms. Lemons has remained employed by Bowen in other capacities continuously to this date.

**B.   Applicable Law & Analysis**[10]

1.   Bowen's Liability:  Direct or Vicarious

Bowen maintains it is not directly or vicariously liable because Ms. Lemons' alleged wrongful acts were outside the scope of her

---

[10] The Court grants the United States and Plaintiffs-Intervenors' request to strike the Declaration of Pat Youngren because it contains inadmissible hearsay. The material on the bottom half of page 2 to the top half of page 3 is STRICKEN pursuant to Federal Rule of Civil Procedure 56(e) because Ms. Young does not have first-hand knowledge of the telephone calls or the May 31, 2000, meeting.

employment. The Court agrees with Plaintiffs and finds genuine issues of material fact exist as to whether Bowen is directly and/or vicariously liable for Mr. Ballas' or Ms. Lemons' alleged wrongful acts.

    *a.   Direct Liability*

The Fair Housing Act, which was enacted to insure that people who historically suffered from discrimination in the housing markets to have an equal opportunity to housing, does not statutorily define the scope of a principal's liability. *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 731 (E.D. Va. 1992). However, the parties agree that traditional principles of agency law are to be applied to the Fair Housing Act. *See Meyer v. Holley*, 537 U.S. 280, 285-86 (2003); *Faragher v. City of Boca Raton*, 524 U.S. 775, 793 (1998); RESTATEMENT (SECOND) AGENCY §§ 219(1)-(2) & 228.

Initially, the Court notes there is no evidence supporting a finding that Bowen is directly liable for taking the alleged bribes. However, the Court finds a genuine issue of material fact exists as to whether Mr. Ballas, a principal of Bowen, engaged in conduct under 42 U.S.C. § 3617:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted under or protected by §§ 3603, 3604, 3605 or 3606 of this Title.

Mr. Ballas stated at his deposition he had heard from Mr. Zarebelov, a Bowen employee who spoke Russian, that two residents agreed with Ms. Prach's version of the story. (Ballas Dep. pp. 63-68 & 73-74.) However, without researching these accounts further, or providing the police with this information, Mr. Ballas decided to terminate Ms. Prach's employment

ORDER ~ 7

prior to the police finishing its investigation. *Id.* pp. 95-98, 119-136, & 189. Then, when the police decided not to pursue the investigation further, Mr. Ballas agreed to have a notice of eviction served on Ms. Prach. (Prach Decl. ¶ 18; Lemons Dep. p. 331.) Accordingly, the Court finds a question of fact for the jury exists as to whether Mr. Ballas' intimidated, threatened, or interfered with Ms. Prach's alleged attempts to prevent FHA violations, thereby making Bowen directly liable.[11]

> *b.  Vicarious Liability*

The Court concludes Plaintiffs presented sufficient evidence to show that Bowen may be vicariously liable for Ms. Lemons' alleged bribery. Agency authority can be expressed, implied, or apparent; yet, the parties disagreement is centered on whether Ms. Lemons had implied or apparent authority and whether Bowen should be responsible even if Ms. Lemons acted outside the scope of her employment.

Implied authority generally exists when conduct is done within the course and scope of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 793 (1998) (citing to RESTATEMENT (SECOND) AGENCY § 219(1). "Within the course and scope of employment" means: (1) the conduct

---

[11] Bowen also maintains it cannot be held liable for any damages associated with Ms. Prach and Mr. Tsiribko moving out of the Westfall Village because Bowen was not a party to the Plea Agreements. However, the Court finds this argument fails to recognize that Bowen served an eviction notice on Ms. Prach approximately one year before these individuals entered into a Plea Agreement.

ORDER ~ 8

1 occurred substantially within the authorized employment time and space
2 limits; (2) the employee was motivated, at least in part, by a purpose
3 to serve the employer; and (3) the act was of a kind that the employee
4 was hired to perform.  RESTATEMENT (SECOND) AGENCY § 228.  "Apparent
5 authority arises from the principal's manifestations to a third party
6 that supplies a reasonable basis for that party to believe that the
7 principal has authorized the alleged agent to do the act in question."
8 *Id.* at 1099.  The existence of an agency relationship and the scope of
9 the agent's authority is a question of fact and should not be decided
10 on summary judgment, unless only one conclusion can be drawn. *C.A.R.*
11 *Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474 (9th
12 Cir. 2000).  Restatement (Second) of Agency § 219(2) provides:

>     A master is not subject to liability for torts of his
>     servants acting outside the scope of their employment,
>     unless:
>     (a) the master intended the conduct or the consequences, or
>     (b) the master was negligent or reckless, or
>     (c) the conduct violated a non-delegable duty of the master, or
>     (d) the servant purported to act or to speak on behalf of the
>     principal and there was reliance upon apparent authority, or
>     he was aided in accomplishing the tort by the existence of
>     the agency relationship.

19 *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998).

20    Accepting cash bribes was not one of Ms. Lemons' listed
21 responsibilities.  Yet, the parties did jointly agree Ms. Lemons was
22 responsible for accepting new applications, reviewing them, and
23 submitting applications to Bowen for final approval, as well accepting
24 and depositing application fees, deposits, and rent. (Ct. Rec. 203 ¶ 9.)
25 Due to these money-related and tenancy-selection responsibilities, the
26 Court finds a genuine issue of material facts exists as to whether

primarily Russian-speaking individuals would reasonably know it was not within Ms. Lemons' scope of employment, and/or within her apparent authority, to accept additional cash fees, especially in light of Ms. Lemons' acknowledgment at her deposition that she had accepted cash for legitimate rental costs, in violation of the sign alleged posted "OUR POLICY IS THAT WE DO NOT ACCEPT CASH FOR PAYMENT."[12]  For these reasons, the Court concludes the jury should determine whether such conduct was within Ms. Lemons' scope of employment, whether Ms. Lemons purported to act on behalf of Bowen and whether the alleged payers of these payments relied upon this apparent authority, whether Ms. Lemons was aided by the existence of the agency relationship, and whether Bowen was benefitted by Ms. Lemons' conduct.

In its defense, Bowen at trial will have an opportunity to present evidence that it "exercised reasonable care" to avoid such unlawful payments and to "eliminate it when it might occur" and discuss whether the Plaintiffs' conduct was reasonable  *See Faragher*, 524 F.2d at 805 (establishing such an affirmative defense in the context of Title VII); *Congdon v. Strine*, 854 F. Supp. 355 (E.D. Penn. 1994).

For the reasons given above, the Court finds the jury is to determine whether Bowen is directly liable for the termination and eviction notice and/or vicariously liable for Ms. Lemons' alleged wrongdoings.  Accordingly, the Court denies Bowen's motion in part.

---

[12]  The Court highlights Mr. Ballas did not state whether this sign was posted in a visible place during the relevant time period and/or whether a Russian interpretation was provided.

ORDER ~ 10

### 2. Protecting Illegal Conduct

Bowen submits allowing Plaintiffs to proceed in this matter and recover for engaging in illegal conduct will frustrate the policy and purpose of the Fair Housing Act because Plaintiffs' underlying conduct was illegal as is evidenced by Plaintiffs' disorderly conduct guilty pleas, citing to *Barlow v. Evans*, 993 F. Supp. 1390 (C.D. Utah 1997). The Court finds *Barlow* is distinguishable.

The district court in *Barlow* determined that a buyer practicing polygamy did not have standing to assert a violation of the Fair Housing Act when a seller decided not to sell a particular parcel to the buyer due to the buyer's polygamy practice. The district court reached this conclusion after observing that the Fair Housing Act's purpose was not to assist in engaging in criminal behavior and the First Amendment does not provide religious protection to polygamy practices.

The Court agrees the Fair Housing Act's purpose is not to aid or abet criminal behavior. However, unlike *Barlow*, the Plaintiffs' misdemeanor conviction for disorderly conduct is separate and distinct from Ms. Lemons' alleged acceptance of bribes, the termination of Ms. Prach's employment, and the eviction notice sent to Ms. Prach. The alleged bribes were received prior to May 30, 2000. Even though the disorderly conduct guilty pleas may have been based on, in part, the individuals' conduct at the May 30, 2000, meeting, the termination of Ms. Prach was, according to Mr. Ballas, due to her inconsistent stories and not based on her conduct at that meeting as he was not present for such. (Ballas Dep. pp. 95-87 & 119-136.) Furthermore, the eviction notice was reportedly related to her termination as she was no longer

receiving rent credit for her work hours. (Prach Decl. ¶ 18; Lemons Dep. p. 331.) Accordingly, the Court finds Plaintiffs are not seeking to promote disorderly conduct, but rather seek to redress unfair housing practices against Russian immigrants and the steps taken by Defendants to suppress the Plaintiff-Interveners protected activities. *See People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725 (E.D. Va. 1992). For these reasons, the Court denies Bowen's motion in part.

### 3.   Anatoliy Tsiribko

Lastly, Bowen argues Mr. Tsiribko cannot maintain an action because he did not secure his rights under the Fair Housing Act because he admitted during his deposition that he did not talk to anyone or pay money. At his deposition, in response to the question of "[w]hat specific things did you do to help tenants at Westfall Village recover their extra money paid to Kerrey Lemons?," (Tsiribko Dep. p. 61), Mr. Tsiribko responded, "[e]verything that I did I signed that I was against. I did not talk to anyone and I did not go with anyone. I went to jail. Can you imagine what would have been if I would have done something?" *Id.* at 61-62.

At the deposition, counsel for Mr. Tsiribko objected to this question as calling for a legal conclusion. Mr. Tsiribko speaks Russian primarily and thus an interpreter was used at the deposition. The Court concludes this statement does not dispose of Mr. Tsiribko's claims, given the difficulty in ascertaining the specific meaning of answers given at depositions where an interpreter is used and follow-up questions on this issue were not asked. Furthermore, the undisputed evidence establishes Mr. Tsiribko was present at the May 30, 2000,

meeting. Accordingly, if the jury believes Plaintiffs' version of the facts that the purpose of this meeting was to advise Ms. Lemons that she needed to return the bribe money, then the jury could find that Ms. Lemons instigated an investigation to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted under or protected by [the Fair Housing Act]." This investigation led to criminal charges against Mr. Tsiribko. Accordingly, the Court denies Bowen's motion in part.

### 4. Conclusion

The Court denies Bowen's Motion for Summary Judgment, finding genuine issues of material fact exist as to whether Bowen is directly liable for Mr. Ballas' conduct and/or indirectly liable for Ms. Lemons' alleged unlawful conduct. Accordingly, the Court denies Bowen's request for attorney fees and costs as well.

For the reasons given above, **IT IS HEREBY ORDERED**:

1. Plaintiff United States' Motion to Expedite their Motion to Strike Defendant Bowen Property Management's Reply Memorandum in Support of Motion for Summary Judgment or, Alternatively, for Leave to File Surreply **(Ct. Rec. 189)**, is **GRANTED.**

2. Defendant's Bowen Property Management's Motion for Summary Judgment, **(Ct. Rec. 162)**, is **DENIED.**

3. Plaintiff United States' Motion to Strike Defendant Bowen Property Management's Reply Memorandum in Support of Motion for Summary Judgment or, Alternatively, for Leave to File Surreply, **(Ct. Rec. 196)**, is **DENIED.**

ORDER ~ 13

4. The Parties shall engage in some form of alternative dispute resolution by the end of August 2005. If the parties jointly agree to utilize a mediator other than the federal magistrate judge, the parties shall advise the Court of such selection in writing.

5. The Statement of Uncontroverted Facts is deemed established under Federal Rule of Civil Procedure 56(d).

**IT IS SO ORDERED.** The District Court Executive is directed to:

(1) Enter this Order,

(2) Provide copies to counsel.

**DATED** this ___15th___ day of August, 2005.

                              s/ Edward F. Shea
                              EDWARD F. SHEA
                         United States District Judge

Q:\Civil\2003\0250.bowen.msj.frm